IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| IN RE: | ) CASE NO. 09-30014-DHW-13 |
| | ) CHAPTER 13 |
| ROBERT WASHINGTON | ) |
| GLORIA WASHINGTON | ) |
| Debtor | ) |

**BRIEF IN OPPOSITION TO TRUSTEE'S OBJECTION TO CONFIRMATION**

Comes now the debtors, Robert and Gloria Washington, and files this brief in opposition to the Chapter 13 Trustee's Objection to the Debtor's Chapter 13 Plan. Stipulated facts have been previously submitted. The only issue remaining is:

1. Whether the debtors' unemployment compensation is a benefit under the Social Security Act and should be included in the debtors' disposable income calculations.

2. Whether the debtors' plan meets the disposable income test within the mandates of §1325 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (hereinafter "BAPCPA").

**I.     Jurisdiction**

This Chapter 13 case is before the Court on the Trustee's objection to confirmation of the Plan. This Court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157.

## II. Definition of Current Monthly Income

Under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 11 U.S.C §707 was amended to require the debtor to complete a "means test" to determine whether the debtor had the means to pay their creditors. The first step in the calculation is to determine the debtor's income for purposes of §707(b)(2). The Court does not consider a debtor's income as it exists on the day of filing but rather calculates the debtor's current monthly income pursuant to §101(10A) ("CMI") which states (in relevant part):

**101.10A Current Monthly Income; § 101(10A)**

The term "current monthly income"--

(A)   means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on--

   (i)   the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or

   (ii)   the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and

(B)   includes any amount paid by an entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (an in a joint case the debtor's spouse if not otherwise a dependent), ***but excludes benefits received under the Social Security Act***, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism. (Emphasis added).

This definition is a critical component of the means test added to section 707(b)2 and of the disposable income test under section 1325(b).3.10A. A fundamental question which must be answered is whether unemployment benefits are "benefits received under the Social Security Act".

## III. Relationship of the Social Security Act to the Alabama Unemployment Compensation Act.

President Franklin D. Roosevelt paved the way for the Social Security Act in 1935.

> "The Social Security Act received its impetus from the Report of the Committee on Economic Security, which was established by executive order of President Franklin D. Roosevelt to study the whole problem of financial insecurity due to unemployment, old age, disability, and health. In its report, transmitted to Congress by the President on January 17, 1935, the Committee recommended a program of unemployment insurance compensation [*131] as a "first line of defense for . . . [a worker] ordinarily steadily employed . . . for a limited period during which there is expectation that he will soon be reemployed. This should be a contractual right not dependent on any means test. . . . It will carry workers over most, if not all, periods of unemployment in normal times without resort to any other form of assistance." *California Dept of Human Resources Development v. Java*, 402 U.S. 121, 130-131 (U.S. 1971)

The United States Congress enacted the Social Security Act on August 14, 1935, 42 U.S.C.A. § 301 et seq. The Social Security Act also established a federal program designed to assist states in administering their programs. 42 U.S.C. § 501, et seq., and on September 14, 1935, Alabama became the first state to enact an unemployment compensation law, General Acts 1935, page 955.[1] The states whose unemployment-compensation programs

---

[1] The Alabama Supreme Court case of *Beeland Wholesale Co. v. Kaufman*, 234 Ala. 249, 174 So. 516 (1937), held the Alabama law constitutional even before the constitutionality of the Federal Social Security Act was determined. It was from cases begun in Alabama that the Supreme Court of the

Case 09-30014    Doc 30    Filed 05/14/09    Entered 05/14/09 19:19:20    Desc Main
Document      Page 3 of 11

satisfy certain requirements qualify for federal funds to administer their programs. The federal statutes relating to funding are set out in the Social Security Act and the Federal Unemployment Tax Act, 26 U.S.C. § 3301 et seq. (the "FUTA"). Under FUTA, a combination of federal and state taxes is levied upon employers. Although they are imposed as "taxes," the amounts paid are, in reality, akin to "premiums" that are paid for unemployment insurance coverage. Proceeds from the taxes are deposited in the U.S. Treasury's Federal Unemployment Trust Fund (the Fund) and each state has a separate account in the Fund.

> "The Secretary of the Treasury is authorized and directed to receive and hold in the Fund all monies deposited therein by a State agency from a State unemployment fund . . ." 42 U.S.C. § 1104; "The Secretary of the Treasury is authorized and directed to pay out of the Fund to any state [**13] agency such amount as it may duly requisition . . ." 42 U.S.C. § 1104(f)."

The funds are generally invested by the Secretary of the Treasury in government securities similar to those for social security trust funds. The use of these funds for any purpose other than payment of unemployment benefits is strictly prohibited. Each individual state administers their own program with federal funds. 42 U.S.C. § 903, et seq.

In Alabama, unemployment is paid pursuant to §25-4-30, et.seq. Code of Alabama, 1975, which includes and is derived from funds paid pursuant to the Social Security Act.

§ 25-4-30. Generally.

---

United States first held the Federal Social Security Act constitutional in May of 1937. *Chas. C. Steward Mach. Co. v. Davis*, 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279, 109 A.L.R. 1293.

There shall be as a special fund, separate and apart from all public moneys or funds of this state, an unemployment compensation trust fund, which shall be administered by the director exclusively for the purposes of this chapter without liability on the part of the state beyond the amounts paid into and earned by the fund. This fund shall consist of:

(1) All contributions paid in or collected under this chapter;

(2) Interest earned upon any moneys in the fund;

(3) Any property or securities acquired through the use of moneys belonging to the fund;

(4) All earnings of such property or securities;

**(5) Any money received from the federal unemployment account in the unemployment trust fund in accordance with Title XII of the Social Security Act [42 U.S.C.S. § 1321 et seq.];**

**(6) All money credited to this state's account in the unemployment trust fund pursuant to Section 903 of the Social Security Act [42 U.S.C.S. § 1103], as amended; and**

(7) All money received for the fund from any other source.

The purpose of the unemployment compensation law is to provide funds to avoid a period of destitution for involuntarily unemployed workers during their unemployment and to ameliorate the tragic consequences of unemployment brought about by the failure of industry to furnish sufficient jobs. *Metcalf v. Department of Indus. Relations*, 245 Ala. 299, 16 So. 2d 787 (1944)*, Department of Industrial Relations v. Tomlinson*, 251 Ala. 144, 36 So. 2d 496, 1948 Ala.

The Alabama Court of Civil Appeals further explained that both the state and federal government had the same goal.

"The Social Security Act and its implementation by state unemployment

compensation laws was enacted in the midst of a deep depression when the evil results of unemployment were only too evident. The Congress and most state legislatures were determined that the tragic and economic socials effect of sudden and prolonged periods of unemployment would be remedied so far as possible." *Holmes v. Cook*, 45 Ala. App.688; 236 So. 2d 352 (1970)

The complex and unique provisions of The Social Security Act and the Alabama Unemployment Compensation Act work in concert. Benefits derived under the Alabama Unemployment Compensation Act are derived under the Social Security Act in that the enactment of the federal act made such a state law possible and feasible. In addition, because the Fund is contributed to by the states and distributed by the Federal Government to the states, it would be hard to argue that unemployment benefits are not benefits derived under the Social Security Act. The federal government regulates and funds all state unemployment programs and to deny the dependence of the Alabama Act or other state unemployment legislation upon the federal statutes is irrational. Furthermore, in deciding the constitutionality of the Alabama Unemployment Act the U.S. Supreme Court has found the following:

> "The United States and the State of Alabama are not alien governments. They coexist within the same territory. Unemployment within it is their common concern. Together the two statues now before us embody a cooperative legislative effort by state and national governments, for carrying out a public purpose common to both, which neither could fully achieve without the cooperation of the other. The Constitution does no prohibit such cooperation." *Carmichael, et al v. Southern Coal & Coke Co*.301 U.S. 495, 57 S. Ct. 868 (1937)

**IV. Unemployment Benefits Are Not Income for Purposes of CMI**

The first bankruptcy case to address the question of whether unemployment benefits

are benefits derived under the Social Security Act and therefor excluded from Current Monthly Income was *In Re Sorrell*, 359 B.R. 167, (Bankr. S.D. Ohio 2007). One of the issues presented was whether the debtor's Chapter 7 case presented abuse under §707(b)(2)(A)(I) based upon the debtor not including unemployment income in the CMI calculation.

The court pointed out that initial court decisions struggled with the lack of clarity and coherence in significant portions of the 2005 Act which required an analysis applying the canons of statutory construction, however, statutory construction is a tool only to be used if the plain meaning of the statute is ambiguous or cannot be determined. *In Re Sorrell* recalled that "the courts must presume that a legislature says in a statue what it means and means in a statue what it say there" quoting *Connecticut Nat'l Bank of Germain*, 503 U.S. 249, 253-254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). The *Sorrell* Court examined other areas of the 2005 Act which contained specific references to the Social Security Act including §362(b)(2), which references sections 466(a)(16), 466(a)(7), 464 and 466(a)(3) of the Social Security Act. In addition, the Court went on to note that references to specific provision of the Social Security Act can also be found in §704(c)(1)(A)(i)and §1302(d)(1)(A)(i), namely sections 464 and 466 of the Act. The Court observed:

> "In all of these examples, Congress did not choose the broad term the "Social Security Act," which is the language chosen in connection with CMI; but, rather, selected specific provisions of the Social Security Act. The CMI definition does not contain any congressionally limited specific provisions of the Social Security Act. It is appropriate to conclude that when Congress wished to limit the applicability of the Social Security Act, it did so by reference to specific sections. Canons of statutory construction approved by the Supreme Court recognize that congressional enactments which contain

particular language in one section of a statute, but omit such particularity in another section, reflect Congress's intention and purpose in such disparate use. BFP v. Resolution Trust Corp, 511 U.S. 531, 537, 114 S.Ct. 1757, 1761, 128 L. Ed. 2d 556 (1994), citing City of Chicago v. EDF, 511 U.S. 328, 338, 114 S.Ct. 1588, 1593, 128 L. Ed. 2d 302 (1994). [**42] See also Keene Corp. v. United States, 508 U.S. 200, 208, 113 S.Ct. 2035, 2040, 124 L. Ed. 2d 118 (1993).

A comparison of the specificity which Congress chose in referring to limited, specific provisions of the Social Security Act in §§ 362(b)(2)(D), (E), (F) and (G), 704(c)(1)(A)(i) and 1302(d)(1)(A)(i) as opposed to Congress's choice in referring to the unlimited, general provisions of the entire Social Security Act in § 101(10A)(B) provides further support for the conclusion that unemployment compensation is one of the "benefits received under the Social Security Act."

*In re Sorrell*, 359 B.R. 167, 183 (Bankr. S.D. Ohio 2007)

Subsequently *In Re Munger*, 370 B.R. 21 (Bankr. D. Mass. 2007), faced the same issue and relied upon the *Sorrell* decision as well as various commentators' support for its interpretation persuasive. Holding that unemployment benefits were benefits derived under the Social Security Act, the *Munger* Court noted that the issue of unemployment compensation has been debated among bankruptcy commentators since the drafting of the Means Test Form in 2005. Although some commentators have disagreed with the exclusion of unemployment income from the calculation of current monthly income[2] and at least one

---

[2] Eugene R. Wedoff, *Means Testing in the New § 707(B)*, 79 Am. Bankr. L.J. 231, 247 (Spring 2005); See also Marianne Culhane & Michaela White, *Catching Can-Pay Debtors -- Is the Means Test the Only Way?* 13 Am. Bankr. Inst. L. Rev. 665, 674 (Winter 2005) (suggesting that the presumed purpose for exclusion of benefits received under the Social Security Act was specifically "to protect retirement benefits at the expense of creditors").

court has relied upon these interpretations,[3] the *Munger* court found the commentators supporting the decision in *In Re Sorrell* to be more persuasive:

> "On the other hand, several bankruptcy commentators support the statutory interpretation set forth in *Sorrell*. *Collier on Bankruptcy*, in its analysis of § 101(10A), states, "[u]nemployment benefits are provided for in Titles III, XII, XIII and XV [of the Social Security Act] . . . While many of these programs primarily benefit lower income families not affected by the means test, a debtor may receive benefits from such a program that would otherwise be counted in current monthly income . . ." suggesting that unemployment compensation should be excluded from the calculation of CMI under the Means Test. *Collier on Bankruptcy* 101-81 (Alan N. Resnick & Henry J. Sommer eds., 2007)."

The Court went on to state that statutory construction of the Bankruptcy Code supported the contention that the phrase is intentionally broad.

> "Sections of the Bankruptcy Code distinguish "unemployment compensation" from "a social security benefit." See, e.g., 11 U.S.C. § 522(d)(10)(A) ("The following property may be exempted under subsection (b)(2) of this section: (10) the debtor's right to receive -- (A) a social security benefit, unemployment compensation, or a local public assistance benefit . . ."). The way in [**14] [*26] which Congress chose to phrase the references in the sections supports the view that "a benefit received under the Social Security Act" in § 101(10A)(B) was purposefully intended to be broader than "a social security benefit." "Unemployment compensation" is included in this broader definition." *In re Munger*, 370 B.R. 21, 26 (Bankr. D. Mass. 2007)

The Trustee points to the new form B22C which allows the debtor to "decide" if his or her unemployment compensation is included in the calculation of CMI. The 2005 Committee Notes to Form B22 explain this treatment as follows:

---

[3] Only one court has ruled that unemployment benefits should be included in calculation of current monthly income based upon Judge Wedoff's article. *In Re Baden*, 396 B.R. 617 (Bankr. M.D. Pa. 2008)

> "Because the federal government provides funding for state unemployment compensation under the Social Security Act, there may be a dispute about whether unemployment compensation is a "benefit received under the Social Security Act." The forms take no position on the merits of this argument, but give debtors the option of reporting unemployment compensation separately from the CMI calculation. The separate reporting allows parties in interest to determine the materiality of an exclusion of unemployment compensation and to challenge it." USCS Bankruptcy F 22A

The Trustee further points out that prior to enactment of BAPCPA, social security benefits were included in the disposable income calculation (*In re Salter*, 2007 WL 1076686 (Bankr. M.D. Ala. April 4, 2007). However, with the implementation of BAPCPA, the exclusions from current monthly income were narrowly drawn ( "benefits received under the Social Security Act" and certain payments to victims of terrorism, war crimes, and crimes against humanity). Although under the old law social security benefits and unemployment compensation could be taken into consideration as income, BAPCPA clearly wished to immunize this type of income from creditors.

## V. Conclusion

Wherefore, premises considered, the Debtors moves the Court to follow the holdings in the cases of *Sorrell* and *Munger* and rule that unemployment compensation is a benefit under the Social Security Act and as such is not included in the calculation of current monthly income. Further, the Debtors move this Court to rule that the Debtors' plan meets the disposable income test under §1325.

Respectfully submitted this the 14th day of May, 2009.

/s/ Richard D. Shinbaum
/s/Vonda S. McLeod
*Attorneys for Debtor*:
Richard D. Shinbaum
Vonda S. McLeod
Shinbaum, McLeod & Campbell, P.C.
566 South Perry Street
Post Office Box 201
Montgomery, AL 36101-0201
334-269-4440