IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
IN RE:                          )
                                )
ROBERT L. WASHINGTON, III       )
and GLORIA JEAN WASHINGTON,     )
                                )
     Debtors.                   )
                                )
                                )
ROBERT L. WASHINGTON, III       )
and GLORIA JEAN WASHINGTON,     )
                                )
     Appellants,                )
                                )     CIVIL ACTION NO.
     v.                         )     2:09cv579-MHT
                                )         (WO)
CURTIS C. REDING,               )
Standing Chapter 13             )
Trustee for the Middle          )
District of Alabama,            )
                                )
     Appellee.                  )
```

OPINION

The appellants, debtors Robert L. Washington, III and Gloria Jean Washington, challenge an order of the United States Bankruptcy Court for the Middle District of Alabama, sustaining the objection of the appellee, trustee Curtis C. Reding, to confirmation of the

Washingtons' Chapter 13 bankruptcy plan and conditionally dismissing this case.  This court's appellate jurisdiction is proper under 28 U.S.C. § 158.  For the reasons that follow, the order of the bankruptcy court will be affirmed.

### I.   STANDARD OF REVIEW

"The district court in a bankruptcy appeal ... functions as an appellate court in reviewing the bankruptcy court's decision."  In re Sublett, 895 F.2d 1381, 1383 (11th Cir. 1990).  Acting in its appellate capacity, the court reviews a bankruptcy court's conclusions of law de novo.  Dionne v. Simmons, 200 F.3d 738, 741 (11th Cir. 2000).

### II.   BACKGROUND

The relevant facts in this case are not in dispute.  The Washingtons filed a voluntary bankruptcy petition under chapter 13 of the United States Bankruptcy Code.

2

In their chapter 13 plan, they proposed that they pay nothing to their unsecured creditors.

The Washingtons indicated on their Schedule I statement of current income that Mr. Washington receives $ 953.33 per month in unemployment compensation as a result of his prior employment. On line 8 of Official Form 22C, the "Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income," they listed $ 146.67 as the average monthly unemployment compensation Mr. Washington received over the six months preceding their bankruptcy petition. They did not list the $ 146.67 as income for the calculation of disposable income. The instructions at line 8 of Official Form 22C state:

> "Unemployment compensation. Enter the amount in the appropriate column(s) of Line 8. However, if you contend that unemployment compensation received by you or your spouse was a benefit under the Social Security Act, do not list the amount of such compensation [in the income column], but instead state the amount in the space below."

3

Id. The space below, where the Washingtons listed the $ 146.67, is labeled, "Unemployment compensation claimed to be a benefit under the Social Security Act." Id. At line 59 of Official Form 22C, they list a negative number for their disposable income: -$ 53.05. If the $ 146.67 in unemployment compensation were included in their disposable income calculation, it would result in a positive disposable income of $ 93.62. This, in turn, would result in payment of $ 5,617.20 to their unsecured creditors over the life of their chapter 13 plan.

The trustee filed an objection to confirmation of the Washingtons' chapter 13 plan. In particular, he objected to their failure to include Mr. Washington's unemployment compensation in their calculation of current monthly income. The bankruptcy court sustained the trustee's objection, holding that: "[U]nemployment compensation is not a benefit received under the Social Security Act as that phrase is used in 11 U.S.C. § 101(10A)(B). Therefore, unemployment compensation cannot be excluded

from 'current monthly income' calculation to ultimately arrive at the debtors' disposable income." Bankr. Ct. Order at 3 (Doc. No. 2-10). The bankruptcy court further ordered that this case be conditionally dismissed.

The Washingtons responded with this appeal.

### III. DISCUSSION

"If the trustee ... objects to the confirmation of [a debtor's chapter 13] plan, then the court may not approve the plan unless, as of the effective date of the plan[,] ... the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period ... will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B). For the purposes of this subsection of the bankruptcy code, "the term 'disposable income' means current monthly income received by the debtor ... less amounts reasonably necessary to be expended." § 1325(b)(2). Current monthly income is defined as "the average monthly income from all sources

5

that the debtor receives ... without regard to whether such income is taxable income, derived during the [preceding] 6-month period." 11 U.S.C. § 101(10A)(A). "'[C]urrent monthly income' ... includes any amount paid by any entity other than the debtor ... on a regular basis for the household expenses of the debtor[,] ... but excludes benefits received under the Social Security Act." § 101(10A)(B).

At issue in this case is whether a debtor's unemployment compensation is a "benefit[] received under the Social Security Act" and thus excluded from the calculation of that debtor's current monthly income. This is a question of first impression in the district courts; one that has divided the bankruptcy courts and scholars that have addressed it elsewhere.[1] Prior to the

---

1. Indeed, even the drafters of Official Form 22C are undecided. As noted above, the form completed by the Washingtons directed them not to list unemployment compensation as income "if you contend that ... [it] was a benefit under the Social Security Act." Official Form 22C (Doc. No. 2-2). The 2005-2008 Committee Notes to
(continued...)

6

order by the bankruptcy court below, only three bankruptcy courts had published opinions on this issue. Two of these courts held that unemployment compensation is a benefit received under the Social Security Act, see In re Sorrell, 359 B.R. 167 (Bankr. S.D. Ohio 2007) (Waldron, B.J.); In re Munger, 370 B.R. 21 (Bankr. D. Mass. 2007) (Rosenthal, B.J.), while the third, now joined by the bankruptcy court below, took the opposite position, see In re Baden, 396 B.R. 617 (Bankr. M.D. Pa. 2008) (Thomas, B.J.). Bankruptcy courts in the Southern District of Illinois, Southern District of Indiana,

---

(...continued)
Form 22C state that,

> "Unemployment compensation is given special treatment. Because the federal government provides funding for state unemployment compensation under the Social Security Act, there may be a dispute about whether unemployment compensation is a 'benefit received under the Social Security Act.' The forms take no position on the merits of this argument."

USCS Bankruptcy F 22C n.B.

Northern District of Georgia, and Central District of Illinois have since joined the latter two courts in holding that unemployment compensation is not a benefit under the Social Security Act.  See In re Winkles, 2010 WL 2680895 (Bankr. S.D. Ill. July 6, 2010) (Grandy, B.J.); In re Nance, 2010 WL 2079653 (Bankr. S.D. Ind. May 21, 2010) (Coachys, B.J.); In re Rose, 2010 WL 2600591 (Bankr. N.D. Ga. May 12, 2010); In re Kucharz, 418 B.R. 635 (Bankr. C.D. Ill. Oct. 28, 2009) (Perkins, B.J.).

"In answering this question [for itself, the court] begin[s] with the understanding that Congress 'says what it means and means in a statute what it says there.'" Hartford Underwriters Ins. Co. V. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000) (citation omitted).  "[W]hen the statute's language is plain, the sole function of the courts--at least where the disposition required by the text is not absurd--is to enforce it according to its terms." Id. (citations and quotation marks omitted). "The 'plain' in 'plain meaning' means that [the court]

8

Case 09-30014   Doc 52   Filed 09/24/10   Entered 09/24/10 11:55:12   Desc Main
Document       Page 8 of 19

look[s] to the actual language used in a statute, not to the circumstances that gave rise to that language." CBS v. Primetime 24 J.V., 245 F.3d 1217, 1224 (11th Cir. 2001).

At first glance, the language at issue in this case--"excludes benefits received under the Social Security Act"--appears fairly straightforward. As indicated by the above-described split, however, bankruptcy courts have had difficulty interpreting and applying this clause with respect to unemployment compensation. See, e.g., Kucharz, 418 B.R. at 637 ("Whether unemployment insurance payments are 'benefits received under the Social Security Act' is a surprisingly difficult question."). There is apparently little serious disagreement about whether unemployment compensation is a "benefit."[2] Rather, the

---

2. Black's Law Dictionary defines 'benefit' as "Financial assistance that is received from an employer, insurance, or a public program (such as social security) in time of sickness, disability, or unemployment." Black's Law Dictionary 167 (8th ed. 2004).

9

question is whether such benefits are "received under" the Social Security Act.

At first blush, the court would read the phrase "benefits received under the Social Security Act" to encompass, and mean, only "Social Security benefits," which has a common understanding that does not include unemployment compensation; the language of two phrases is obviously quite similar. Indeed, unemployment compensation programs are administered at the state level in accordance with state law. <u>Carmichael v. Southern Coal & Coke Co.</u>, 301 U.S. 495, 526 (1937). Alabama, for example, has established "an unemployment compensation fund, which [is] administered by [a state-employed] director." 1975 Ala. Code § 25-4-30. Alabama law requires contributions to the fund, <u>see, e.g.</u>, § 25-4-51, defines unemployment, <u>see</u> § 25-4-71, and lays out the criteria for benefit eligibility, <u>see, e.g.</u>, § 25-4-77. Unemployment compensation payments are made by the State to eligible individuals.

10

On the other hand, contributions to the Alabama fund, like contributions to all state unemployment funds, must "be paid over immediately to the [United States] Secretary of the Treasury to the credit of the 'Unemployment Trust Fund.'"  <u>Steward Machine Co. v. Davis</u>, 301 U.S. 548, 576 (1937).  The Unemployment Trust Fund was established through a provision of the Social Security Act, 42 U.S.C. § 1104(a), and another provision of the Act directs the "Secretary of the Treasury to invest such portion of the Fund as is not, in his judgment, required to meet current withdrawals," § 1104(b).  "The Fund [is] invested as a single fund, but the Secretary of the Treasury ... maintain[s] a separate book account for each State agency."  § 1104(e).  The Secretary is further "authorized and directed to pay out of the Fund to any State agency such amount as it may duly requisition, not exceeding the amount standing to the account of such State agency at the time of such payment."  § 1104(f).

11

Federal law does not "require[] any State to adopt, or to maintain, an unemployment compensation program." Baker v. GM Corp, 478 U.S. 621, 632 (1986); see also Carmichael, 301 U.S. at 526. The Social Security Act "did, however, motivate the enactment of state programs throughout the Nation." Baker, 478 U.S. at 632. This motivation was provided, in part, by the promise of economic assistance; "[a]ll federal-state cooperative unemployment insurance programs are financed in part by grants from the United States pursuant to the Social Security Act." California Dep't of Human Resources Development v. Java, 402 U.S. 121, 125 (1971). This economic assistance includes grants to "assist[] the States in the administration of their unemployment compensation laws." 42 U.S.C. § 1101(c)(1)(A)(i). The Social Security Act also directs the Secretary of Labor to "establish a continuing and comprehensive program of research to evaluate the unemployment compensation system," § 1106(a)(1); provides funding for the training

12

of state personnel "to prepare them, or improve their qualifications, for service in the administration of the unemployment compensation program," § 1107(a)(1); authorizes the Secretary of Labor to "detail Federal employees to State unemployment compensation administration ... for temporary periods for training or for purposes of unemployment compensation administration," § 1107(c); and, provides for the establishment of an "Advisory Council on Unemployment Compensation" to "evaluate the unemployment compensation program, including the purpose, goals, countercyclical effectiveness, coverage, benefit adequacy, trust fund solvency, funding of State administrative costs, administrative efficiency, and any other aspects of the program," § 1108.

Of course, the United States "naturally has attached some strings to its largesse." Jenkins v. Bowling, 691 F.2d 1225, 1228 (7th Cir. 1982). A State is not eligible for federal funding unless its unemployment compensation

13

program meets certain requirements provided by the Social Security Act. See, e.g., 42 U.S.C. § 503(a) (listing "[p]rovisions required" in state laws); see also Java, 402 U.S. at 125 ("The Secretary of Labor may not certify payments of federal funds unless he first finds that the State's program conforms to federal requirements."); but see N.Y. Tel. Co. V. N.Y. State DOL, 440 U.S. 519, 537 (1979) ("The voluminous history of the Social Security Act made it abundantly clear that Congress intended the several States to have broad freedom in setting up the types of unemployment compensation that they wish.").

Not only is a State ineligible for federal funding if it fails to meet the requirements established by the Social Security Act, but courts may enjoin provisions of an unemployment compensation program that are inconsistent with the requirements and objectives of the Social Security Act. Jenkins, 691 F.2d at 1228 ("Despite the lack of any obvious basis in the language of [the Social Security Act] for such a remedy, the Supreme Court

14

... has consistently assumed that it is a proper remedy."). For example, in <u>Java</u>, 402 U.S. at 122, the Supreme Court addressed "whether a State may, consistent with § 303(a)(1) of the Social Security Act[, 42 U.S.C. § 503(a)(1)], suspend or withhold unemployment compensation benefits from a claimant, when an employer takes an appeal from an initial determination of eligibility." The Court found that such action "violates the command of 42 U.S.C. § 503(a)(1) that state unemployment compensation programs 'be reasonably calculated to insure full payment of unemployment compensation when due,'" <u>id</u>. at 129-30, and ultimately held that enforcement of the challenged provision of the California Unemployment Insurance Code "must be enjoined because it is inconsistent with [provisions] of the Social Security Act," <u>id</u>. at 135.

The Court reached this conclusion through an examination of "[t]he purpose of the <u>federal</u> statutory scheme." <u>Id</u>. at 130 (emphasis added). According to the

15

Court, "[t]he purpose of the [Social Security] Act was to give prompt if only partial replacement of wages to the unemployed," id. at 131, and the challenged California procedure "frustrate[d] one of the Act's basic purposes-- providing a 'substitute' for wages," id. at 134.  The Court further stated that: "[This] reading of the [Social Security Act] ... gives effect to the congressional objective of getting money into the pocket of the unemployed worker at the earliest point that is administratively feasible.  That is what the Unemployment Insurance Program is about."  Id. at 135.

The Supreme Court has also explained that the Social Security Act and state unemployment compensation programs "embody a cooperative legislative effort by state and national governments, for carrying out a public purpose common to both," Carmichael, 301 U.S. at 526, and has consistently referred to unemployment compensation programs as "federal-state cooperative" programs, see Califano v. Boles, 443 U.S. 282, 285 n.2 (1979); Java,

16

402 U.S. at 125. This notion of a "cooperative" federal-state program is reinforced by the text of the Social Security Act itself, which consistently refers to "the unemployment compensation system" and "the unemployment compensation program." See, e.g., 42 U.S.C. §§ 1106(a)(1), 1107(a)(1) & 1108 (emphasis added).

The Washingtons therefore argue that, when the Social Security Act is viewed as the federal statutory component of a "federal-state cooperative" program directed at "providing a 'substitute' for wages," then unemployment benefits received through federally funded state programs should be viewed as also "received under the Social Security Act." They conclude that the phrase "benefits received under the Social Security Act" is sufficiently broad to include unemployment benefits and that 11 U.S.C. § 101(10A)(B) permits debtors, like them, to exclude unemployment benefits from their calculation of current monthly income.

17

However, the trouble with this extreme expansive reading of the overall Social Security Act is that, in the end, it gets the court nowhere, for this reading also supports the conclusion that not only the phrase "benefits received under the Social Security Act" includes unemployment benefits but that the phrase "Social Security benefits" does as well, and it cannot be reasonably argued that the common understanding of the phrase "Social Security benefits" includes unemployment benefits. Indeed, the difference between the phrases (the presence of the words "received under") cannot carry weight that one excludes unemployment benefits while the other does not, when neither phrase refers to unemployment benefits at all; to the contrary, the phrases are otherwise so similar that if one excludes unemployment benefits (as does "Social Security benefits") then the other must as well. The court is therefore left with its initial, straightforward, and plain understanding that the phrase "benefits received

18

under the Social Security Act" does not include unemployment benefits--a plain and straightforward understanding that the court believes the legislators had when they wrote and adopted the language.

* * *

For the forgoing reasons, the court holds that the bankruptcy court did not err in sustaining the objection of trustee Curtis C. Reding to confirmation of the Chapter 13 bankruptcy plan proposed by Robert L. Washington, III and Gloria Jean Washington.  An appropriate judgment will be entered.

DONE, this the 24th day of September, 2010.

                                           /s/ Myron H. Thompson
                                      UNITED STATES DISTRICT JUDGE